UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL KAYSER and BARBARA KAYSER, | Civ. No. 13-5999 (KM) |
| Plaintiffs, | OPINION |
| v. | |
| OCWEN LOAN SERVICING, LLC, MORGAN STANLEY CAPITAL HOLDING, LLC, and HSBC BANK USA as Trustee for the Morgan Stanley Mortgage Loan Trust, 2004-2AR, Mortgage Pass-Through Certificates, Series 2004-2AR, | |
| Defendants. | |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiffs Michael and Barbara Kayser (for simplicity, "Kayser") are homeowners/mortgagors of a property at 9 Autumn Drive, Scotch Plains, New Jersey (the "Property"). Kayser has filed an Amended Complaint alleging three state law causes of action: "Count One - Wrongful Collection Practice"; "Count Two - Quiet Title"; and "Count Three - Fraud." (ECF no. 44) The defendants are Morgan Stanley Capital Holding, LLC, the mortgagee bank; Ocwen Loan Servicing, LLC, which services the loan; and HSBC Bank USA as trustee and assignee of the mortgage and holder of the note (although Kayser denies this). The common feature of all of Kayser's causes of action is a factual claim that the defendants are not the true owners of the underlying mortgage and note. Now before the Court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons stated herein, the motion will be granted.

1

## I. FACTS

Kayser entered into an adjustable rate promissory note dated June 10, 2003, in the original principal amount of $396,000 in favor of Morgan Stanley Dean Witter Credit Corporation. (DSMF ¶1, citing Note; Lucas Decl. ¶ 4, citing Note; Pl. Opp. 5)[1] To secure the note, Kayser entered into a mortgage dated

---

[1] Citations to record items are abbreviated thus:

AC = Amended Complaint (ECF nos. 44 & 69-1)

Def. Br. = Defendants' brief in support of motion for summary judgment (ECF no. 68)

DSMF = Defendants' Statement of Material Facts, submitted in connection with prior motion for summary judgment, filed Sept. 14, 2015 (ECF no. 46-4)

> The defendants have not filed a new Rule 56.1 statement of material facts in connection with their combined renewed motion for summary judgment; they rely on the statement submitted in connection with a prior motion for summary judgment, filed Sept. 14, 2015, which was administratively terminated.
>
> The parties do not raise different facts on this motion; Kayser did not respond to the defendants' previous statement of material facts; and Kayser does not now protest the defendants' direct reliance on declarations and exhibits without submission of a new statement of material facts. Therefore, I occasionally refer to the Sept. 14, 2015 Statement of Material Facts for purposes of background information and placing the parties' exhibits in context.

Lucas Decl. = Declaration of Kyle Lucas, Senior Loan Analyst for Ocwen Financial Corporation (ECF no. 68-5)

Note = Adjustable rate promissory note made June 10, 2003 (ECF no. 68-6)

Mortgage = Mortgage dated June 10, 2013 (ECF no. 68-7)

First Assignment = Assignment of Mortgage from Morgan Stanley Private Bank, National Association to Morgan Stanley Mortgage Capital Holdings LLC, dated Oct. 18, 2012 (ECF no. 68-8)

Second Assignment = Assignment of Mortgage from Morgan Stanley Mortgage Capital Holdings LLC to HSBC Bank USA, as Trustee, dated Sept. 19, 2013 (ECF no. 68-9)

Servicing Transfer Notice = Notice of Servicing Transfer Real Estate Settlement Procedures Act (RESPA) and Welcome to Ocwen Loan Servicing LLC, effective Apr. 2, 2012 (ECF no. 68-10)

M. Kayser Dep. = Excerpt of transcript of deposition of Michael Kayser (ECF no. 68-11)

June 10, 2003. (Lucas Decl. ¶¶ 4–5; M. Kayser Dep. 25–26) The original mortgagee was Morgan Stanley Dean Witter Credit Corporation, which became known as Morgan Stanley Credit Corporation; by merger, that corporation's successor is Morgan Stanley Private Bank, National Association ("MSPBNA"). (Lucas Decl. ¶ 6)

By the First Assignment, dated October 18, 2012, MSPBNA assigned its entire interest in the loan to Morgan Stanley Capital Holdings, LLC ("MSCH"). The First Assignment was recorded in the Recorder's Office of Union County, New Jersey, at Book 1402, page 0249. (Lucas Decl. ¶ 6, citing First Assignment)

By the Second Assignment, dated September 19, 2013, MSCH assigned its entire interest in the loan to HSBC Bank USA, as Trustee ("HSBC as Trustee") for Morgan Stanley Mortgage Loan Trust 2004-2AR, Mortgage Pass-Through Certificates, Series 2004-2AR (the "2004-2AR Trust"). The Second Assignment was recorded in the Recorder's Office of Union County, New Jersey, at Book 1411, page 0767, Instrument no. 154238. (Lucas Decl. ¶ 7, citing Second Assignment)

---

2004-AR Prospectus Cover = Cover page of Prospectus Supplement to a prospectus dated Jan. 28, 2004 for the Morgan Stanley Mortgage Loan Trust 2004-2AR (ECF no. 68-16)

Collateral File = Collateral file for the mortgage loan (ECF no. 68-17)

M. Kayser Interrog. = Plaintiff's First Response to Interrogatories (ECF no. 68-18)

Pl. Opp. = Plaintiffs' brief in response to defendants' motion for summary judgment (ECF no. 69)

PSA = Pooling and Serving Agreement, Dated Feb. 1, 2004 for the Morgan Stanley Mortgage Loan Trust 2004-2AR Mortgage Pass-Through Certificates, Series 2004-2AR (ECF no. 69-3)

Def. Reply = Reply brief in support of defendants' combined renewed motion for summary judgment (ECF no. 72)

3

It is undisputed that Kayser is not current on the loan, although there may be a dispute as to the dollar amount of the delinquency.[2] (Lucas Decl. ¶ 10; *see* Pl. Opp. 8-9) According to Ocwen, the servicer, no monthly payment was made on October 11, 2011, or thereafter. (*Id.*) At his deposition on May 7, 2015, Michael Kayser stated that he had last made a monthly mortgage payment in March 2012. (DSMF ¶¶ 6-7, citing Kayser Dep. 26) No foreclosure action has been instituted, however. (Lucas Decl. ¶ 11)

Ocwen began servicing the loan on April 2, 2012. (Lucas Decl. ¶¶ 2, 8, citing Servicing Transfer Notice, a/k/a "Hello/Goodbye Letter"). A qualified affiant of Ocwen, Kyle Lucas, attests that the original note and mortgage are in the collateral file for Kayser's loan, now in the custody of counsel for defendants in this action, and counsel attaches a copy of the Collateral File. (Lucas Decl. ¶ 9; Collateral File)

## I. LEGAL STANDARDS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Motions to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised at any time. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999). "[B]ecause subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977). A necessary corollary is that the court can raise sua sponte subject-matter jurisdiction concerns." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003).

Rule 12(b)(1) challenges may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter

---

[2] For reasons explained *infra*, any dispute as to the extent of delinquency is immaterial to Kayser's claims and therefore will not preclude summary judgment.

4

jurisdiction. *Iwanowa*, 67 F. Supp. 2d at 438. A court considering such a facial challenge assumes that the allegations in the complaint are true. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438. A factual attack, on the other hand, permits the Court to consider evidence extrinsic to the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified on other grounds by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). Thus "Rule 12(b)(1) does not provide plaintiffs the procedural safeguards of Rule 12(b)(6), such as assuming the truth of the plaintiff's allegations." *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008).

> The burden of establishing federal jurisdiction rests with the party asserting its existence. [citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n. 3, 126 S. Ct. 1854, 164 L.Ed.2d 589 (2006).] "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." [citing *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)).] A facial attack "concerns 'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" [citing *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (alterations in original) (quoting *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir.2007)).]
>
> "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." [citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).] By contrast, in reviewing a factual attack, "the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence. If there is a dispute of a material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction." [citing *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006) (citations omitted).]

5

*Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (footnotes omitted; case citations in footnotes inserted in text).

Here, the crux of the defendants' jurisdictional challenge is that no defendant has commenced a foreclosure action in state court against Kayser. The defendants submit a declaration of a suitable person with knowledge to that effect (Lucas Decl. ¶ 11), and Kayser submits nothing showing even the imminent threat of a foreclosure action. There is likewise no allegation that any defendant has initiated foreclosure proceedings in Kayser's Amended Complaint. Accordingly, no extrinsic proofs are proffered or required to resolve the jurisdictional question; whether I consider the defendants' 12(b)(1) attack to be facial or factual, my analysis is the same.

### B. Summary Judgment Standard and Procedures

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party has the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that
6

creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party may rely to support its assertion that genuine issues of material fact exist); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992).

Rule 56 and the case law interpreting it, then, require that a party submit affidavits and evidence sufficient to persuade the court that there is or is not an issue of fact. Defendants, as movants, have done so. Their papers include two declarations, as well as properly sponsored mortgage documents, assignments, deposition and interrogatory answers. Defendants also previously submitted the Statement of Undisputed Material Facts, citing to the supporting evidence, that is required by the Local Rules of this District. Loc. R. 56.1(a). (*See* DSMF; discussion of DSMF at n.1)

Kayser, however, has made little effort to comply with the requirements of Rule 56. He has submitted a brief in opposition, accompanied by: (A) a copy of the Amended Complaint (ECF no. 69-1); (B) a letter from defendants' counsel

responding to a revised interrogatory request;[3] and (C) a Pooling and Servicing Agreement for the 2004-2AR Trust (the "PSA") (ECF no. 69-3). Kayser has not submitted any affidavit, declaration, or certification. Instead, Kayser's brief cites repeatedly to the unsupported allegations of his Amended Complaint. (*See, e.g.*, Pl. Opp. 4 ("The relevant facts are gleamed [*sic*] from the Amended Complaint.") The complaint, he says, complies with the pleading requirements "set forth by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)." Because, Kayser continues, "[n]othing in the Deposition or document discovery contradict[s] any of the allegations in the Amended Complaint[,] . . . the Amended Complaint is not merely a matter of law, but has all of the facts alleged that remain undisputed by Defendants' Discovery responses." (Pl. Opp. 10) That is a patently incorrect application of the relevant standards on a summary judgment motion.

The defendants' merits-based arguments are brought on a motion for summary judgment—not a motion to dismiss. Such a motion requires evidence. A plaintiff cannot beat back a defendant's motion for summary judgment by repeating the allegations of the complaint. "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).

Nevertheless, I review the entire record of the case and view Kayser's limited submissions in the context of the overarching command of Rule 56 that the Court, if it is to grant summary judgment, must satisfy itself based on the record of the case that there exists no genuine, material issue of fact. *See, e.g.*, *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (holding that even where a local rule deeming unopposed motions to be conceded, the court was still required to analyze the movant's summary judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e)); *see*

---

[3] In this letter, the defendants simply deny possession of any record to indicate than an insurer has "paid out on a Kayser loan" to any of the defendants or any previous holder of Kayser's note or mortgage. (ECF no. 69-2) The letter has no probative value for purposes of Kayser's claims.

8

*also Houston v. Randolph Twp.*, 934 F. Supp. 2d 711, 723 (D.N.J. 2013), *aff'd*, 559 F. App'x 139 (3d Cir. 2014).

## II. ANALYSIS

### A. Kayser's Claims

As I have not previously written on this case,[4] I review the causes of action asserted.

Kayser alleges in Count One—"wrongful collection practice"— that the "Note and Mortgage in this matter never legally transferred to the Trust." (AC ¶ 60) Therefore, Kayser alleges that defendant MSCH "has no rights to enforce collection," and "cannot sue Plaintiff for foreclosure or collect on the note or authorize Defendant Ocwen to do so." (AC ¶¶ 62, 63). I understand Count One to challenge the defendants' standing to enforce the note and mortgage through collection efforts or in foreclosure proceedings.

Count Two asks for an injunction to quiet title on the note and mortgage. Kayser alleges that "[a]s the Trust closed in 2004 and/or 2005 years before the Note and mortgage were created, the question about legal title remains." (AC ¶ 65) Therefore, Kayser concludes, title "never transferred to Defendants." (AC ¶ 66) Moreover, Kayser says, "Defendants cannot produce the physical and original Note and Mortgage." (AC ¶ 65) Kayser also contends that because the 2004-2 AR-Trust had a February 2004 closing date, his note and mortgage could not have been assigned to the 2004-2AR Trust in 2013. (AC ¶¶ 32–33, 65)[5]

---

[4] Of the defendants, only MSPBNA moved to dismiss. Kayser consented, and by order dated March 3, 2014, I ordered the complaint dismissed against MSPBNA and held its motion to dismiss moot. (ECF no. 21)

[5] I dismiss this particular allegation without further consideration, as it seems to be based on Kayser's failure to appreciate that mortgage loans can be allocated to mortgage loan trusts even after the "closing date" of the trusts. *See, e.g.*, PSA at 17 (defining "Mortgage Loan Schedule", noting "such schedule may be amended . . . from time to time to reflect the addition of Replacement Mortgage Loans to, or the deletion of Deleted Mortgage Loans from, the Trust Fund."); *id.* 25 (defining "Replacement Mortgage Loan" as "[a] mortgage loan substituted . . . for a Deleted Mortgage Loan . . . ."); *id.* 39–40 § 2.04 (rep and warranty requiring repurchase or substitution of mortgage loans, upon discovery of breach post-closing date).

9

Count Three alleges that "Defendant knew or should have known it does not possess true, legal title to the collection on the subject mortgage," but nevertheless made telephone calls and sent letters pressing Kayser to pay. (AC ¶¶ 67–69) Kayser alleges this amounts to fraud. Within Count Three, Kayser also alleges that Ocwen made "false promises in regards to modifying the mortgage," which led Kayser to spend "more than $100,000," and that these actions violated the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (AC ¶¶ 73–74) Kayser does not indicate which provisions of the FDCPA he seeks to enforce, so I will consider the most likely candidates: Section 1692e, which prohibits various forms of false or misleading representations, such as falsely representing the "character, amount or legal status of any debt" "with the collection of any debt," 15 U.S.C. § 1692e, §1692e(2)(a), and Section 1692f, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f.

Finally, Kayser contends in his brief that he has brought claims for misapplication of funds and unjust enrichment. (Pl. Opp. 10) These theories are mentioned in the Amended Complaint only in passing. Only the three counts described *supra* contain factual allegations even potentially sufficient to satisfy federal pleading standards. Attempting to raise new claims in a brief in opposition to summary judgment is procedurally impermissible. *See* Fed. R. Civ. P. 15(a). Therefore, I set aside these two miscellaneous state-law claims.

### B. Article III Jurisdiction Analysis

*1. Claims Concerning Foreclosure*

Defendants initially contend that this Court lacks subject matter jurisdiction because there is no actual case or controversy, as Article III of the United States Constitution requires. U.S. Const. Art. III; *see Rodriquez v. 32nd Legislature of Virgin Islands*, 859 F.3d 199, 207 (3d Cir. 2017) ("Under Article III of the Constitution, a federal court may exercise . . . judicial power over only actual, ongoing cases or controversies . . . ." (internal quotation marks and

10

citations omitted)). The defendants argue Kayser is preemptively defending against a mortgage foreclosure action not yet filed, effectively seeking declaratory judgment and injunctive relief to prevent foreclosure. But "'[t]o satisfy the Article III case or controversy requirement, a plaintiff must establish that he or she has suffered an 'injury in fact' that is both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 542 (3d Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130 (1992)).

As the defendants point out, other judges in this district have consistently dismissed claims that preemptively challenge mortgagees' ability to foreclose on the basis of invalid title where no foreclosure proceedings have been initiated, whether under a Rule 12(b)(6) standard (with respect to claims for injunctive relief) or for lack of an "actual controversy" under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).[6] *See, e.g., Espaillat v. Deutsche Bank Nat. Tr. Co.*, No. 2:15-CV-00314-SDW-SC, 2015 WL 2412153, at *2 (D.N.J. May 21, 2015) ("[D]eclaratory relief requires a live controversy of sufficient immediacy between the parties. In contrast, here, there is no pending foreclosure action to make these allegations relevant. . . . Further, there is no foreclosure action for this Court to enjoin." (citing *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1170 (3d Cir. 1987)); *Coleman v. Deutsche Bank Nat. Tr. Co.*, No. CIV.A. 15-1080 JLL, 2015 WL 2226022, at *3 (D.N.J. May 12, 2015) (reasoning "there is no immediate controversy warranting declaratory judgment as there is no active foreclosure action" and also noting the lack of an active foreclosure action in assessing likelihood of success for injunctive relief); *accord Andujar v. Deutsche Bank Nat. Tr. Co.*, No. CIV.A. 14-7836, 2015 WL 4094637, at *2–3

---

[6] "The [U.S. Supreme] Court has . . . held that the Declaratory Judgment Act requirement of an "actual controversy" is identical to the constitutional requirement of 'cases' and 'controversies.'" *Cutaiar v. Marshall*, 590 F.2d 523, 527 (3d Cir. 1979) (citing *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 239-40, 57 S. Ct. 461 (1937)).

11

(D.N.J. July 7, 2015); *Gonzalez v. U.S. Bank Nat. Ass'n*, No. CIV.A. 14-7855, 2015 WL 3648984, at *3–4 (D.N.J. June 11, 2015).

To the extent Kayser challenges the defendants' ability to foreclose on his mortgaged property (and Count One appears to contain such an attempt), I join the other judges in this district and find that this particular claim fails.

I understand Kayser's claims to concern more than just the threat of foreclosure, however. Indeed, aside from requesting "an injunctive Order of Quiet Title of the Note and Mortgage" (AC ¶ 67), Kayser never asks for relief in relation to an anticipated foreclosure. Rather, the primary purpose of Counts One and Three, as I see it, is to stop the defendants from trying to collect mortgage payments or to penalize them for doing so. I understand Count Two as Kayser's attempt to have his mortgage debt discharged entirely. (*See* Pl. Opp. 11)

### 2. *Claims Concerning Collection and Title*

Kayser's claims, so understood, are nevertheless jurisdictionally infirm. Counts One and Three allege injury by way of the defendants' unlawful collection (or attempted collection) of loan payments. Kayser, however, does not dispute that he owed loan payments to *some* party. He alleges only that certain assignments were invalid, and that the purported assignees therefore do not possess the rights of creditors under the note and mortgage. That allegation, without more, is not enough to confer standing. A rule often applied by courts in this district is that "a mortgagor, or borrower, does not have standing to allege that an assignment between two third parties is invalid." *English v. Fed. Nat. Mortg. Ass'n*, No. CIV.A. 13-2028 CCC, 2013 WL 6188572, at *4 (D.N.J. Nov. 26, 2013) (dismissing quiet title claim on 12(b)(6) motion but also finding no "injury in fact" for standing); *see also, e.g., Perez v. Jpmorgan Chase Bank, N.A.*, No. CA 14-2279 (CCC), 2016 WL 816752, at *3 (D.N.J. Feb. 29, 2016) ("Plaintiffs do not claim they are parties to or third-party beneficiaries of the PSA or assignments of their Note or Mortgage. Accordingly, the Court finds Plaintiffs lack standing to bring claims on those bases."), *appeal dismissed*

(June 6, 2016); *In re: Sia*, No. AP 11-1436, 2015 WL 9462089, at *9 (D.N.J. Dec. 28, 2015) (obligors did not have standing to challenge the validity of the assignment of an obligation between two third parties); *Andujar*, 2015 WL 4094637, at *5 ("Merely alleging . . . that the loan documents are invalid or improperly assigned does not state a claim for an action to quiet title." (citation omitted)); *Schiano v. MBNA*, No. CIV.A. 05-1771 JLL, 2013 WL 2452681, at *26 (D.N.J. Feb. 11, 2013) (finding no injury in fact, also noting that plaintiff failed to explain how "alleged irregularities in the assignments between third parties somehow cloud title in the mortgage itself"), *aff'd,* No. CIV.A. 05-1771 ILL, 2013 WL 2455933 (D.N.J. June 3, 2013).

That rule draws on the "fundamental principle that assignment of a mortgage generally has no impact on the borrower's rights or obligations." *Aliperio v. Bank of Am., N.A.*, No. 2:16-CV-01008-KM-MAH, 2016 WL 7229114, at *14 (D.N.J. Dec. 13, 2016); *see also Gilarmo v. U.S. Bank NA ex rel. CSAB Mortg. Backed Tr. 2006-1*, 643 F. App'x 97, 101 (3d Cir. 2016) (non-precedential) ("[Plaintiff] is not a party to the PSA nor a third-party beneficiary of the PSA, and her injuries are hypothetical. She admits that she took out the loan, that she is in default, and she does not argue that she ever paid more than the amount due on her loan, or that she received a bill or demand from any entity other than the defendants."); *Bauer v. Mortg. Elec. Registration Sys., Inc.*, 618 F. App'x 147, 149 (3d Cir. 2015) (non-precedential) (no standing to challenge transfer of mortgage for same reasons); *Marchi v. Hudson City Sav. Bank*, No. CV 15-5725 (KM), 2017 WL 628476, at *5 (D.N.J. Feb. 15, 2017) ("In short, the complaint fails to plead that the merger has had any real-world consequences at all, from [plaintiff's] point of view. It sets forth no factual basis for a fraud claim for damages."); *U.S. Bank Nat. Ass'n v. Radisic*, No. A-4160-13T3, 2015 WL 4275977, at *4 (N.J. Super. Ct. App. Div. July 16, 2015) ("Defendants do not deny the debt and do not assert that they face conflicting claims as to whom they owe the money. Therefore, they have no standing to challenge the assignment.").

The same principle applies to the extent Kayser is attempting to challenge the assignments or contest ownership of the note and mortgage based on the defendants' breach of the PSA, as to which Kayser is not a party or beneficiary (*see* PSA; Pl. Opp. 8 & AC ¶¶ 34–38 (suggesting Defendants' noncompliance with PSA by failing to register a trust with the Securities and Exchange Commission)). *See, e.g., Gilarmo, supra; In re: Sia,* 2015 WL 9462089, at *9 ("[T]he bankruptcy court correctly held that Debtors did not have standing. They were neither a party to the PSA nor third party beneficiaries of the agreement."); *In re Walker,* 466 B.R. 271, 285 (Bankr. E.D.Pa. 2012) ("[I]t appears that a judicial consensus has developed holding that a borrower lacks standing to (1) challenge the validity of a mortgage securitization or (2) request a judicial determination that a loan assignment is invalid due to noncompliance with a pooling and servicing agreement, when the borrower is neither a party to nor a third party beneficiary of the securitization agreement."); Def. Reply 11–12 (collecting cases applying this principle).[7]

Where a plaintiff has not even alleged that errors in assignment caused it to overpay or that the defendants failed to credit mortgage payments,[8] or "that

---

[7] Even if Kayser is merely submitting the PSA as evidence that, for example, the Plaintiffs do not know which trust the note and mortgage are in and thus cannot possess the original documents (Pl. Opp. 8, 12) or that an insurer has already satisfied Kayser's debt (*id.* 12), his effort is premised on a fundamental misunderstanding of PSAs and the residential mortgage backed securities ("RMBS") they govern.

PSAs govern the rights and responsibilities between parties involved in the creation and maintenance of a trust comprised of mortgage loans, pooled for the purpose of packaging cash flows generated by mortgage payments. *See generally* PSA; Investopedia, Residential Mortgage-Backed Security, *available at* http://www.investopedia.com/terms/r/rmbs.asp. By their nature, PSAs do not grant rights to the individual mortgagors whose properties collateralize the loan pool and they do not impact the contractual relationships between mortgagees and individual mortgagors.

[8] Kayser does dispute the defendants' calculation of missing payments but claims only that "[t]he timing of the . . . Lost Assignment and the recorded Assignments in 2013 suspiciously coincide" with Kayser's request for "payoff and reinstatement figures from Ocwen." (Pl. Opp. 69) These statements lack evidentiary support and at any rate do not plausibly connect the alleged errors in assignment to Kayser's alleged injuries.

14

any entities *other than* the defendants have ever tried to collect payment or to institute foreclosure proceedings," I have declined to find Article III injury-in-fact. *Aliperio*, 2016 WL 7229114, at *13–16; *see also Gilarmo*, 643 F. App'x at 101; *cf. Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* May 24, 2016 (a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."). Kayser fails even to allege, let alone create a triable issue, that he has been subjected to conflicting demands or that his mortgage payments (which at any rate he ceased making in 2011 or 2012) were not credited to his account.

Accordingly, I agree with Defendants that this Court lacks subject matter jurisdiction over Kayser's claims.

### B. Merits Analysis

In the alternative, however, and to facilitate appellate review, I consider the arguments on the merits. Defendants also contend that the claims asserted in the Amended Complaint are contrary to the evidence they have submitted, and are not supported by any independent evidence, and I agree. Essential to each of the four causes of action before me ((1) wrongful collection practice, (2) quiet title, (3) fraud, and (4) violation of the FDCPA) is one factual contention: that the defendants are not the true owners of the note and mortgage and therefore cannot collect on it.[9] Defendants have set forth a well-documented

---

Similarly, Kayser's unsupported allegations that Ocwen made "false promises in regards to modifying the mortgage," which led Kayser to spend "more than $100,000" (AC ¶ 73 ; Pl. Opp. 9) may be a reference to paying off a second mortgage, not the subject of this action. At any rate, these non-specific allegations would fail under a Rule 8 pleading standard, let alone a Rule 56 summary judgment standard. Therefore, I set them aside.

9    Count I ("wrongful collection") alleges little more than this.

Pursuant to New Jersey's quiet title statute (Count II), "a plaintiff may maintain an action to 'clear up all doubts and disputes concerning' competing claims to land." *Coleman*, 2015 WL 2226022, at *3 (quoting N.J. Stat. Ann. 2A:62–1); *see also Espaillat*, 2015 WL 2412153, at *3 ("The purpose of an action to quiet title is to put within the power of a person, who is in peaceable possession of realty as an owner, a means to compel any other person, who asserts a hostile right or claim, or who is

15

case which, if unrebutted, establishes as a matter of law that that they are the owners by assignment of the note and mortgage.

Kayser does not dispute that on June 10, 2003, he entered into the note and mortgage, secured by the Scotch Plains property. (Lucas Decl. ¶¶4, 5, citing note and Mortgage, M. Kayser Dep. 25–26)

In addition to a copy of the mortgage, Defendants have produced a copy of the note, signed by Kayser on June 10, 2003, which states: "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" (Note ¶ 1) Appended to the note is an "Endorsement Allonge" (Note p. 5), which contains the words "Pay To The Order Of" at the bottom of the page, followed by a blank field. Just below "Pay To The Order Of" is the signature of a Senior Vice President of Morgan Stanley Dean Witter Credit Corporation, the original mortgagee. This is a "blank indorsement," which carries a special legal significance. *See* N.J. Stat. Ann. § 12A:3-205(b); *id.* Comment 2 (if "the holder of an instrument, . . . writes the words 'Pay to the order of' without completing the indorsement by writing the name of the indorsee[, and] [t]he holder's signature appears under the quoted words," the indorsement "is a blank indorsement and the instrument is payable to bearer.").

---

reputed to hold such a right or claim, to come forward and either disclaim or show his right or claim, and submit it to judicial determination." (quoting *English v. Federal Nat. Mortg. Ass'n,* No. 13–2028, 2013 WL 6188572, *3 (D.N.J. Nov.26, 2013)). If the defendants are the rightful owners of the note and mortgage, then there is no competing claim to Kayser's encumbered property.

The elements of a fraud claim under New Jersey common law are "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors,* 148 N.J. 582, 610, 691 A.2d 350, 367 (1997). The material misrepresentation Kayser alleges here concerns the defendants' title to the note and mortgage and thereby their legal basis for seeking to collect mortgage payments; this is the same allegation at the heart of Kayser's FDCPA Sections 1692e and 1692f claims.

16

Defendants have also produced a recorded First Assignment, dated October 18, 2012. By that assignment, the mortgagee's corporate successor, MSPBNA, conveyed its entire interest in the loan to MSCH. (DSMF ¶ 4, citing First Assignment with stamp showing recordation)

Additionally, Defendants have produced a recorded Second Assignment, dated September 19, 2013. By that assignment, MSCH assigned its entire interest in the loan to HSBC as Trustee for the 2004-2AR Trust. (Lucas Decl. ¶ 7, citing Second Assignment with stamp showing recordation)

Further, Defendants have introduced affidavit and documentary evidence that Ocwen began servicing the loan on April 2, 2012. (DSMF ¶ 12, citing "Hello/Goodbye Letter"; Lucas Decl. ¶ 2).[10]

This evidence sufficiently establishes Defendants' ability to enforce the note and mortgage. Mortgages on real estate in New Jersey, including all of their stipulations and covenants, are "assignable at law by writing, whether sealed or not, and any such assignment shall pass and convey the estate of the assignor in the mortgaged premises, and the assignee may sue thereon in his own name . . . ." N.J. Stat. Ann. § 46:9-9. Still, "[a]s a general proposition, a party seeking to foreclose a mortgage must own or control the underlying debt." *Wells Fargo Bank, N.A. v. Ford*, 418 N.J. Super. 592, 597, 15 A.3d 327, 329–30 (App. Div. 2011) (quoting *Bank of N.Y. v. Raftogianis*, 418 N.J. Super. 323, 327–28, 13 A.3d 435 (Ch. Div. 2010)). Ownership or control of the underlying debt equates to the ability to enforce the underlying note. New Jersey's version of the Uniform Commercial Code (the "NJUCC") governs the transfer of negotiable instruments, including mortgages, and thus determines whether the defendants can enforce the note. *HSBC USA, N.A. v. Dennis*, No. A-5522-14T2, 2017 WL 541463, at *5 (N.J. Super. Ct. App. Div. Feb. 9, 2017) (unpublished) (citing *N.J.S.A.* 12A:3–104).

---

[10] Kayser was notified pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.A. § 2605(b), that Ocwen was made the servicer for Kayser's mortgage loan (*See* Servicing Transfer Notice). Kayser does not allege any RESPA violation or ineffective transfer of servicing rights.

17

> There are three categories of persons entitled to
> enforce negotiable instruments: (1) "the holder of the
> instrument," (2) "a nonholder in possession of the
> instrument who has the rights of a holder," or (3) "a
> person not in possession of the instrument who is
> entitled to enforce the instrument pursuant to
> [N.J.S.A. 12A:3-309] or [N.J.S.A. 12A:3-418]." N.J.S.A.
> 12A:3-301. See Mitchell, supra, 422 N.J. Super. at
> 222-23. Under category one, the statute provides "that
> for a person other than the one to whom a negotiable
> instrument is made payable to become a 'holder,' there
> must be a 'negotiation[.]' " Mitchell, supra, 422 N.J.
> Super. at 223 (quoting Ford, supra, 418 N.J. Super. at
> 598.

Id.; N.J. Stat. Ann. § 12A:3-301; see also In re: Sia, 2015 WL 9462089, at *10; U.S. Bank Nat'l Ass'n v. Paragon 150 Pierce St., L.L.C., No. CV 09-5717 (ES), 2012 WL 12904679, at *5 (D.N.J. Oct. 19, 2012); Ford, 418 N.J. Super. at 597–599; Raftogianis, 418 N.J. Super. at 331-32.

> Where, as here, the ownership of an instrument is
> transferred, the transferee's attainment of the status of
> "holder" depends on the negotiation of the instrument
> to the transferee. In re Kemp, 440 B.R. 624, 630
> (Bankr. D.N.J. 2010) (citing N.J.S.A. 12A:3-201(a)).
> The two elements required for negotiation are the
> transfer of possession of the instrument to the
> transferee, and its indorsement by the holder. Id.
> (citing N.J.S.A. 12A:3-201(b)).

In re: Sia, 2015 WL 9462089, at *10.

Kayser claims "the note produced in discovery is unsigned and unendorsed and therefore has no probative value," (Pl. Opp. 7) but the note clearly contains a signed-in-blank indorsement, which means it is payable to the bearer. N.J. Stat. Ann. § 12A:3-205(b); see also Potoczny v. Aurora Loan Servs., 636 F. App'x 115, 119 (3d Cir. 2015) (under analogous Pennsylvania UCC, "[Defendant] was the holder of the indorsed-in-blank note, and thus was entitled to enforce it in foreclosure proceedings even if there were defects in the chain of assignment."); HSBC USA, N.A. v. Dennis, 2017 WL 541463, at *5 (acknowledging lower court's finding that note was indorsed in blank and finding that defendant became "the holder of the instrument" upon assignment

of the mortgage and transfer of possession of the original note); *cf. Wells Fargo Bank, N.A. v. Vesprey*, No. A-1863-14T4, 2016 WL 6833199, at *2 & n.3 (N.J. Super. Ct. App. Div. Nov. 21, 2016) ("[T]o have standing, a foreclosing plaintiff either must have possession of the promissory note or an assignment of the mortgage that predated the original complaint." (citing *Mitchell*, 422 N.J. Super. at 216) (also noting that note was indorsed in blank)).

Kayser also contends that "the Original Note is "clearly not in [the] possession of any of the Defendants." (Pl. Opp. 7) This bare contention is not supported by any evidence, and by its nature, it is not made on Kayser's personal knowledge. In contrast, Kyle Lucas, the servicer Ocwen's qualified affiant, attests that the original note and mortgage are in the collateral file for the Kayser loan, now in the custody of counsel for defendants in this action. (Lucas Decl. ¶¶ 1–3, 9) Counsel have submitted a properly-sponsored copy of that collateral file. (*See* Collateral File 2 (indicating original note is included); *id.* 6–9 (Note and "Endorsement Allonge"))

The only "evidence" Kayser submits to the contrary is not evidence at all; it consists solely of allegations in the complaint—*e.g.*, that the assignments never validly took place or that the Trust did not exist at the time. The confusing welter of nearly unintelligible allegations as to problems in the chain of assignments seem to be based largely on speculation, with no supporting facts or evidence, that certain of the involved entities ceased to exist before the dates of the assignments. There is no testimony or exhibit establishing anything of the kind. In short, Kayser has raised no issue of fact as to the validity of the assignments or who has title to the note and mortgage.

There being no issues of material fact raised as to the assignment of the mortgage, the transfer of the note, or the defendants' possession of the original note, I find that the defendants are the proper owners of Kayser's note and mortgage. Therefore, they would be authorized to collect mortgage payments and should they choose, foreclose. Accordingly, even assuming the court possessed jurisdiction, all four of Kayser's causes of action would be dismissed

19

for failure to submit evidence sufficient to raise a genuine, material issue of fact.[11]

### III. CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is GRANTED and the Amended Complaint is dismissed. An appropriate Order follows.

Dated: August 18, 2017

*Kevin McNulty*

**HON. KEVIN MCNULTY, U.S.D.J.**

---

[11] Kayser's FDCPA claim would face further obstacles, such as proof that the defendants are "debt collectors" subject to the Act. *See* 15 U.S.C. § 1692a(6)(f); *Humphrey v. PennyMac Holdings, LLC*, No. CV153622KMMAH, 2017 WL 3184467, at *4 (D.N.J. July 26, 2017) (where defendant held note and mortgage securing plaintiff's property by assignment, its attempts to collect the loan did not violate the FDCPA, which "'does not apply to persons or businesses collecting debts on their own behalf.'" (quoting *Staub v. Harris*, 626 F.2d 275, 277 (3d Cir. 1980)); *Schiano v. MBNA*, No. CIV.A. 05-1771 JLL, 2013 WL 2452681, at *12 (D.N.J. Feb. 11, 2013) (collecting cases holding that "mortgage servicers . . . are exempt from the FDCPA if the mortgage was not in default at the time they began servicing the loan."), *aff'd*, No. CIV.A. 05-1771 ILL, 2013 WL 2455933 (D.N.J. June 3, 2013); *see also See Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014) ("To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.").